UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 15 CR 299 |
| | ) | |
| v. | ) | |
| | ) | Honorable Sara L. Ellis. |
| MATTHEW BROWN | ) | |
| | ) | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO REVOKE DEFENDANT'S BOND PURSUANT TO 18 U.S.C. § 3148(b)

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully moved this Court, pursuant to 18 U.S.C. 3148(b), to revoke defendant Matthew Brown's bond. In support of its oral motion on September 30, 2015, the government states as follows:

### BACKGROUND

Following FBI agents' probable cause arrest, defendant Matthew Brown was charged by complaint on May 22, 2015 with distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A). The complaint charged defendant with distributing child pornography to an undercover law enforcement officer in a "Kik"[1] chatroom formed for the purpose of trading child pornography. During the Kik chat with the undercover officer, the undercover officer asked defendant if he had ever molested his fiance's three-year-old daughter, and defendant responded: "Not yet, but I've taken pics." Defendant then distributed

---

[1] Kik is an online chat and messaging application that allows users to create "chat groups" in which only invited chat group members can communicate with each other.

several child pornography images to the undercover officer, including at least one child pornography image defendant produced using his fiancé's three-year-old daughter, who lived in his home.

On the date of defendant's initial appearance, the United States moved to detain defendant because he posed a risk to the community. Following a detention hearing, defendant was released on conditions that included home incarceration at the Plano, Illinois home of his 78-year-old grandmother, who agreed to serve as his third-party custodian. *See* Docket Number 12. Defendant's conditions of release also included a $50,000 unsecured bond, and "no contact with the alleged victim's family." *See* Docket Number 12.

Despite these bond conditions, beginning on approximately August 9, 2015, defendant sent at least 24 text messages and initiated at least one voice call to the victim's mother. In several text messages, defendant encouraged the victim's mother to travel to his third-party custodian's home to have direct contact with him. In one text message, sent on or about August 14, 2015 at 9:18 am Central Time, defendant wrote to the victim's mother:

> Don't ever contact this phone again ever. Bring a tracphone (sic).[2] Park down the street. Be here at one in the morning. Don't let me down. I love u. Don't respond please.

The victim's mother told law enforcement that she did not travel to defendant's home or provide the "tracphone" he requested.

---

[2] TracFone Wireless, Inc. is a prepaid wireless mobile phone provider.

According to the victim's mother, on August 14, 2015 defendant used his third-party custodian's mobile phone to initiate a voice call during which he suggested that if the victim's mother did not travel to his third-party custodian's home to meet with him, he would commit suicide.

After subpoenaing relevant telephone records and confirming that defendant used his third-party custodian's mobile phone to contact the victim's mother, on August 21, 2015 the United States moved to revoke defendant's bond. The magistrate judge determined that defendant had violated the terms of his bond and prohibited defendant from using any mobile phones, but declined to revoke defendant's bond.

Since the date of defendant's arrest on May 22, 2015, the United States and law enforcement executed a search warrant on the mobile smartphone found on defendant's person at the time of his arrest. Based on the search of defendant's smartphone, law enforcement confirmed that defendant produced at least two additional child pornography images using his fiancé's three-year-old daughter. Also, while executing that search warrant law enforcement found a "Kik" application, which automatically logged into the Kik account from which the undercover officer received the child pornography.

Agents were also able to review transcripts for several chats between defendant and other Kik users. The chat history confirmed that, after distributing child pornography to the undercover officer, on several occasions defendant distributed child pornography to other Kik users.

Defendant's Kik chat history also revealed that, during chats with other Kik users, defendant wrote that he produced child pornography images using his fiancé's three-year-old daughter and offered to "swap" those images in exchange for other Kik users' child pornography. For example, on or about May 17, 2015, defendant chatted with a person using the Kik user name "Justask084." After the two exchanged child pornography, defendant asked "Justask084" if he has any children, and "Justask084" wrote that he has a 13-year-old stepdaughter. Defendant also asked "Justask084" if he ever produced child pornography images using his 13-year-old stepdaughter, and "Justask084" confirmed that he did. Defendant wrote to "Justask084" that he has a four-year-old daughter and asked: "Wanna swap [photographs of our daughters]?" "Justask084" asked what defendant would provide in exchange for the photographs of "Justask084"'s 13-year-old daughter. In response, defendant wrote: "I can send Dropbox now and I'll take live [photographs of my fiancée's daughter] when I get her tomorrow."

Law enforcement agents also recently executed a search warrant on Dropbox accounts defendant used when distributing child pornography to other Kik users. Those Dropbox accounts contained hundreds of additional child pornography images and videos.

On September 17, 2015, a grand jury returned a five-count indictment that included three counts of production of child pornography, in violation of 18 United States Code Section 2251(a), and two counts of transportation of child pornography in violation of 18 United States Code Section 2252A(a)(1). The mandatory

minimum sentence for each production count is 15 years' imprisonment, and the mandatory minimum sentence for each transportation count is 5 years' imprisonment.

## LEGAL FRAMEWORK

Title 18, United States Code, Section 3142(f)(1-2), identifies when the Court must hold a detention hearing, which includes and is not limited to cases involving crimes of violence and/or any felony offense (that is not otherwise a crime of violence) with a minor victim. See 18 U.S.C. §§ 3142(f)(1)(A)&(E). In such cases, and others so enumerated, there are rebuttable presumptions applicable to the detention determination. See 18 U.S.C. §§ 3142(f)(2-3). In other words, there are cases where it is presumed that no conditions of release will assure a defendant's appearance, the safety of the community, or both. This is one of those cases.

In defendant's case, Section 3142(e)(3)(E) establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of other people and the community, in that there is probable cause (in the form of a grand jury indictment) to believe that defendant committed an enumerated offense involving a minor victim, namely, production of child pornography in violation of 18 U.S.C. § 2251(a).

In a presumption case such as this one, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *United States v. Portes*, 786 F.2d 758, 764 (1985); *United States v. Burdette*,

813 F. Supp. 2d 1, 3-4 (D.D.C. 2011) (reversing magistrate judge's decision and ordering detention of defendant charged with attempted production of child pornography). In situations where a defendant actually meets his burden of production as to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. *Portes*, 786 F.2d at 764 (*citing United States v. Dominiguez,* 783 F.2d 702, 707 (7th Cir. 1986). Indeed, the Seventh Circuit has noted that the presumptions contained in section 3142(e), including the presumption of detention in child pornography production cases such as this one:

> do not disappear when rebutted, like a "bursting bubble" presumption, nor do they actually shift the burden of persuasion to the defendant. They are "rebutted" when the defendant meets a "burden of production" by coming forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is "rebutted".... Use of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g).

> *United States v. Dominiguez,* 783 F.2d 702, 707 (7th Cir.1986).

In cases in which a defendant rebuts the presumption, the United States Code specifies four additional factors for the court to consider in its analysis of whether any condition or combination of conditions would assure a defendant's appearance before the Court and the safety of the community. Section 3142(g) provides that the Court "shall ... take into account the available information" regarding:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant], including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(3) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Pretrial detention may be ordered either upon (1) a clear and convincing showing that release will result in a danger to the community or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See, e.g., United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985).

## ARGUMENT

**I.    Detention is Appropriate Given the Nature and Circumstances of the Instant Offense, Which Involves a Minor Victim (Detention Factor 1), and The Weight of the Evidence Against the Defendant (Detention Factor 2).**

The nature and circumstances of the instant offense (detention factor 1) strongly support detention. The defendant is charged with producing child pornography. His victim was three years old at the time of the offense, a clear

indication that the defendant is a danger to the most vulnerable people in our society. And the defendant represents a particular danger because of his repeated efforts to find Kik users who would "swap" child pornography images of his fiancé's three-year-old daughter in exchange for child pornography images of their children.

Moreover, the strength of the government's case is strong. For example, the mobile smartphone found on defendant's person at the time of his arrest contained a Kik application that was logged into the Kik account used to distribute the child pornography images to the undercover officer. Further, the forensic evidence from that mobile phone is highly probative of defendant's guilt, particularly the additional child pornography images produced by defendant using the three-year-old victim (counts two and three of the indictment) and the transcripts of his chats with other Kik users, in which he offers to trade child pornography images of the three-year-old victim.[3]

## II.    Defendant Poses a Danger to Others and The Community (Detention Factor 4)

As to the nature and seriousness of the danger to any person or the community, under Section 3142(g)(4), the defendant used his fiancé's three-year-old daughter—a girl who lived in his home, was under his custody and care, and called him "daddy." Production of child pornography is one of the most serious offenses against children in the federal code and in itself poses a significant threat to

---

[3] As noted above, over the United States' objection the magistrate judge ordered defendant released, subject to several bond conditions. However, at the time the magistrate judge made that decision: (1) the charges against defendant included exclusively transportation of child pornography; and (2) defendant was charged by complaint. The landscape has changed considerably since that time.

children in the community. But the threat to the community posed by defendant is perhaps greater than other child pornography production defendants. Defendant has not only shown a willingness to use a three-year-old child to produce child pornography, but in chats with the undercover officer suggested that he was planning to molest the three-year-old victim in the future. Indeed, when asked by the undercover officer whether he had ever molested the young victim, defendant wrote: "not yet…"

Defendant also poses a danger to the community in that he has demonstrated willful disregard for the bond conditions imposed by the magistrate judge at the outset of this case. Defendant contacted the victim's mother repeatedly despite the magistrate judge's explicit instruction not to contact the victim or anyone in the victim's family. Defendant even asked the victim's mother to bring him a disposable cell phone that he could use to avoid law enforcement's efforts to monitor his compliance with his bond conditions. Moreover, the victim's mother was, unfortunately, somewhat responsive to defendant's communications, indicating that it is even more important for the Court to protect the victim from the defendant. Put simply, absent detention, it would be impossible to monitor the defendant 24/7 to ensure he does not commit another sexual offense or once again violate another condition of his release.

### III. The History and Characteristics of the Defendant (Detention Factor 3) Weigh in Favor of Detention

Although defendant does not have prior criminal convictions, his history and characteristics weigh in favor of detention. As stated above, defendant repeatedly

used his fiancé's three-year-old daughter to produce child pornography, repeatedly traded and/or attempted to trade those child pornography images in exchange for other child pornography images, and suggested to the undercover officer that he planned to molest the young victim in the future. *See Burdette*, 813 F. Supp. 2d at 4 (reversing magistrate judge's decision to release defendant charged with attempted production of child pornography despite his lack of a prior criminal history; "the Court finds the Magistrate Judge's decision to release defendant was erroneous because of the other factors demonstrating the danger of releasing defendant under any conditions.")

Finally, defendant's third-party custodian has proven that she is either unable or unwilling to ensure his compliance. Defendant contacted the victim's mother repeatedly using his third-party custodian's mobile phone, and he did so while at her house. Defendant instructed the victim's mother to travel to his third-party custodian's home while she was home, demonstrating that defendant was not concerned that the third-party custodian would detect or interfere with the proposed meeting. Given the third-party custodian's age (78 years old) and defendant's determination to violate bond conditions with which he disagrees, it is not surprising she cannot effectively monitor him.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court (1) revoke defendant's release on bond and order him detained; and (2) provide such other relief as is just and proper.

                                               Respectfully submitted,

                                               ZACHARY T. FARDON
                                               United States Attorney

By:    */s/ John D. Mitchell*
             JOHN D. MITCHELL
             Assistant U.S. Attorney
             219 South Dearborn St., Rm. 500
             Chicago, Illinois 60604
             (312) 353-5159

Dated: October 7, 2015