UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW BROWN | 15 CR 299<br><br>Honorable Sara L. Ellis |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits this sentencing memorandum concerning defendant Matthew Brown. For the reasons set forth below, the government respectfully requests that this Court sentence defendant to a sentence within the applicable Guidelines range.

**I.     BACKGROUND AND OFFENSE CONDUCT**[1]

**A. Defendant's Production of Child Pornography using Victim A**

On or about February 24, 2015, while at his home in Montgomery, Illinois, defendant used his Sony Smartphone to access a "Kik" messaging application that allowed Brown to communicate (i.e., "chat") and exchange child pornography images and videos via the internet with other Kik users.[2] Unbeknownst to defendant, one

---

[1] Information in this section and throughout this memorandum is based on Probation's Presentence Investigation Report and Sentencing Recommendation, the Government's Version, and materials previously produced to the defense.

[2] At sentencing, the government will provide to the Court a binder containing a sample of the images that defendant produced using Victim A, as well as a sampling of the child pornography images defendant possessed and transported to the UC, so that the Court can fully evaluate the nature and circumstances of the defendant's conduct. As one court noted, "[a]bsent examining the images, one cannot get a true sense of the depravity that they depict. Thus, the Court implores any reviewing Court to personally examine the images at issue and

Kik messaging application user with whom he chatted was an undercover law enforcement officer ("UC").

During the course of defendant's chats with the UC, defendant used the messaging application to send the UC several child pornography images and videos, including a sexually explicit child pornography image depicting Victim A's prepubescent vagina. This image was charged in the indictment as Count 1.

Victim A was 3 ½ years-old. Defendant knew Victim A because he was engaged to marry Victim A's mother, Individual A. At the time of the offense, Victim A lived with and was in the custody, care, and supervisory control of the defendant; indeed, Victim A viewed defendant as a father figure and referred to the defendant as "daddy."

Prior to sending the child pornography image of Victim A to the UC, defendant explained to the UC that he had "a four-year-old daughter." When the UC asked defendant if he had ever sexually abused his four-year-old daughter, defendant responded: "Not yet, but I've taken pics." The UC then asked defendant, "How dirty were the pics you took[?]" Defendant responded, "Pretty dirty lol [laugh out loud]." The UC wrote that he had an eight-year-old daughter. Defendant explained to the UC that he would produce and exchange sexually explicit child pornography images of his "four-year-old daughter" in exchange for sexually explicit images of the UC's

---

not simply rely on a written description of their contents. The Court acknowledges that the review of such images is, to say the least, uncomfortable. There are some images that are haunting, and they cannot be unseen. However, any uneasiness felt by the individual reviewing the image pales in comparison to the harm caused by the images being created in the first place." *United States v. Cunningham*, 680 F. Supp. 2d 844, 854 (N.D. Ohio 2010), aff'd, 669 F.3d 723 (6th Cir. 2012).

eight-year-old daughter, writing, "if u send me a live nude[,] I will too." Defendant asked the UC to produce and send a child pornography image of the UC's eight-year-old daughter, writing, "Can I see her pussy?" At another point in the chat, the UC asked defendant how he wanted the UC's daughter to pose, and defendant responded, "from behind" and "Ever spread her from behind[?]"

Defendant then knowingly used Victim A to produce a lewd and lascivious close-up image depicting Victim A's prepubescent vagina, which he created with his Sony Smart Phone. After producing the image, defendant used the Kik internet messaging application on his Sony Smartphone to distribute the sexually explicit image of Victim A to the UC.

In addition to the sexually explicit image of Victim A that defendant produced and sent to the UC on or about February 25, 2015, on other occasions defendant employed and used Victim A to engage in sexually explicit conduct for the purpose of producing additional visual depictions of such sexually explicit conduct. For example, defendant used the camera on his Sony Smartphone to produce an image depicting the lascivious exhibition of defendant's naked and erect penis in the same image as Victim A, for the purpose of producing a visual depiction of such conduct. This image was charged as Count 3 in the indictment.

**B. Defendant's Transportation and Possession of Child Pornography**

During the course of defendant's chats with the UC on or about February 24, 2015, defendant used the Kik messaging application on his Sony Smartphone to transport to the UC a child pornography image of a nude prepubescent girl on a bed

with her legs spread open and an object inserted in her anus (Count 4), and another child pornography image of the same nude prepubescent girl on a bed with her legs spread open and her arms behind her head (Count 5).  After sending the child pornography images to the UC, defendant wrote, "I love this girl. She gets traded in all groups. LOL."  The UC responded, "LOL.  Yes she has been around. I think she is like 11 [years old]" and "very sexy."  Defendant agreed and asked the UC to send him child pornography images, writing, "Yeah, u have any for me?"

### C. Defendant's Possession of Additional Child Pornography and Communications with other Child Pornography Traffickers on Kik

Defendant also possessed, using his Sony Smartphone and a Dropbox account he created and controlled, more than 200 child pornography images and 43 child pornography videos.[3]  These images were submitted to the National Center for Missing and Exploited Children ("NCMEC"), which determined that that defendant possessed a series of child pornography called the "Sweet Sugar Series" and another called "8 Kids Series," both of which were child pornography images depicting identified minor victims.[4]  In addition, the child pornography images defendant possessed included a depiction of masochistic abuse of a prepubescent girl, under 12 years old, with, among other things, "bitch" and "abuse" written on her stomach in pink paint, marker, or lipstick. Another such image depicted a young boy, approximately four years old, performing a sexual act on an adult male's erect penis.

---

[3] After defendant's arrest, the government obtained search warrants for his Sony Smartphone and his Dropbox account.

[4] As discussed below, the victims entitled to restitution include Victim A and the minor victims depicted in the child pornography "Sweet Sugar Series" and the "8 Kids Series."

Another image depicted a young boy, approximately eight years old, performing a sexual act on another prepubescent child's anus.

Defendant's Kik chat history also revealed that, during chats with other Kik users, he wrote that he had produced child pornography images using his fiancé's four-year-old and offered to "swap" those images in exchange for other Kik users' child pornography. For example, on or about May 17, 2015, defendant chatted with a person using the Kik user name "Justask084." After the two exchanged child pornography, defendant asked "Justask084" if he had any children, and "Justask084" wrote that he had a 13-year-old stepdaughter. Defendant also asked "Justask084" if he had ever photographed his 13-year-old stepdaughter, and "Justask084" confirmed that he had. Defendant wrote to "Justask084" that he had a four-year-old daughter[5] and asked: "Wanna swap [photographs of our daughters]?" "Justask084" asked what defendant would provide in exchange for the photographs of "Justask084"'s 13-year-old daughter. In response, defendant wrote: "I can send Dropbox now and I'll take live [photographs of defendant's 'daughter'] when I get her tomorrow."

## II. GUIDELINE CALCULATIONS AND APPLICABLE STATUTORY MINIMUM AND MAXIMUM SENTENCES

The government agrees with the Guideline calculation prepared by the Probation Office and included in the PSR.[6] PSR ¶¶ 29-55. Specifically, the

---

[5] Victim A was born in September 2011, so she was in fact just not quite four years old at the time of this exchange between defendant and "Justask084."

[6] The PSR was prepared in August 2018, and the Probation Department correctly calculated defendant's Guidelines using the 2016 Guidelines Manual. PSR at ¶18. The Guidelines calculation is the same under the 2018 Guidelines Manual currently in effect.

government agrees that, with a three-level reduction for acceptance of responsibility, the defendant's total offense level is 39. With a Criminal History Category of I, Probation correctly calculated defendant's Guidelines range as 262 to 327 months' imprisonment. PSR ¶¶ 119. Defendant's counts of conviction carry a mandatory 15-year term of imprisonment and a maximum term of 50 years' imprisonment, as well as a term of supervised release of at least five years. PSR ¶¶ 118 and 124.

## III. THE FACTORS SET FORTH IN 18 U.S.C. § 3553 WARRANT A SENTENCE WITHIN THE GUIDELINES RANGE

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Although a sentence within the Guidelines range is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. Considering these factors, a sentence within the advisory Guidelines range is sufficient, but not greater than necessary, to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of defendant's offense,

---

The plea agreement included a four-level enhancement pursuant to Guideline § 2G2.1(b)(4)(B), "because Victim A was a toddler or infant at the time of the offense." At the time of the offense, Victim A was 3.5 years old. It is unclear whether a child over the age of three is considered a "toddler" under this Guideline enhancement, and therefore the government is not seeking a four-point enhancement under Guideline § 2G2.1(b)(4)(B). Although the government does not advocate increasing defendant's Guidelines calculation by four levels because Victim A was a "toddler" at the time defendant used Victim A to produce child pornography images, the Court should consider Victim A's age when assessing the nature and circumstances of the offense and other considerations under 18 U.S.C. § 3553.

Although not included in the plea agreement, the PSR correctly included a two-level enhancement, pursuant to Guideline § 2G2.2(b)(6), because the defendant used an interactive computer service, namely a Kik messaging application, for the transmission, receipt, and distribution of the child pornography.

6

promote respect for the law, provide just punishment for defendant's crime, and afford adequate deterrence.

### A. Nature and Circumstances of the Offense and Defendant's History and Characteristics

The nature and circumstances and history and characteristics of the defendant require a substantial prison sentence within the Guidelines. Defendant preyed upon the most innocent and vulnerable of victims—children. Defendant collected and traded child pornography images and videos that were produced by others. These images are shocking and display the horrific exploitation of young children. One image law enforcement found in defendant's Dropbox account depicted a young boy, approximately four years old, performing a sexual act on an adult male's erect penis. Another image depicted a young boy, approximately eight years old, performing a sexual act on another prepubescent child's anus.

While possessing and transporting these child pornography images is a serious crime, it was far from defendant's most serious offense. Defendant produced child pornography using his fiance's three-year-old daughter, Victim A. Victim A was not just any three year old girl. She was a three-year-old girl who lived with defendant, looked to the defendant as a father figure, and called the defendant "daddy." The PSR notes that defendant knew Victim A since Victim A was five months old, and defendant told Probation that he was "like a father to her." PSR ¶ 33. Despite this, defendant produced child pornography images using Victim A. One such image— charged as Count 3—was an image defendant produced depicting himself masturbating in the presence of Victim A. Another—charged as Count 1—is a close-

7

up image of Victim A's prepubescent vagina. As explained above, defendant used the image of Victim A's vagina as a commodity in an effort to obtain child pornography images of the undercover officer's (ficticious) eight-year-old daughter. Based on his relationship with Victim A and her age—again, she was three years old at the time of the offense—the nature and circumstances of the offense weigh in favor of a substantial sentence within the Sentencing Guidelines.

Defendant's history and characteristics also weigh in favor of a substantial sentence. As pointed out in the PSR and defendant's sentencing memorandum, and as evidenced by the letters submitted to the Court, defendant has loving and supportive parents. Defendant also has no criminal history and had consistent employment prior to his arrest. Significantly, defendant has accepted responsibility for his criminal conduct, and he has waived his right to appeal the Court's sentence in this case. Further, after he was charged, defendant met with the government for several proffers and provided law enforcement with tips that led to successful prosecutions of two other child pornography traffickers that defendant had met in child pornography chatrooms. These are all mitigating factors the Court should consider when imposing a reasonable sentence, but must weigh them against the seriousness of this crime.

### B. Section 3553(b) Factors Also Weigh in Favor of a Guidelines Sentence

A Guidelines sentence is also necessary to reflect the seriousness of defendant's offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further

8

crimes of the defendant. In particular, and more so than in nearly all other crimes, crimes involving the exploitation of young children such as this one require a substantial sentence to specifically deter this defendant and to protect the public from further crimes by the defendant. In support of his sentencing memorandum, the defendant submitted a "Psychosexual Evaluation" that states that defendant "demonstrated no sexual interest in males or in prepubescent persons (under 13 years old) of either gender." Def. Sentencing Memo., Ex. 1 at 9. But that conclusion, based on information provided by the defendant after being charged with these offenses, belies both the evidence in this case and common sense. Much more telling are defendant's words and actions *before* facing the serious charges for which he now faces sentencing. Indeed, prior to being charged in this case, defendant frequented Kik chatrooms set up for the purpose of exchanging child pornography, and in those chatrooms defendant in fact exchanged child pornography images with other child pornography traffickers. In addition, on his phone and in his Dropbox account, defendant possessed numerous graphic videos and images of prepubescent children engaged in sexual acts with adults, and defendant took the egregious step of using Victim A to produce child pornography on several occasions. And perhaps most telling in terms of defendant's future plans with respect to Victim A, when asked by the UC whether he had ever molested Victim A, defendant answered: "*Not yet*, but I've taken pics." Defendant's words and actions prior to his arrest are strong evidence that the public needs protection from further crimes by this defendant, and the

9

government respectfully requests a substantial sentence within the Sentencing Guidelines.

Additionally, general deterrence is a significant concern in this case because others must be deterred from distributing and possessing child pornography. Indeed, "[t]he logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). Further, "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing." A substantial period of incarceration is necessary to deter defendant and others from committing similar crimes in the future.

Finally, defendant needs to receive treatment for his pedophilia and compulsive sexual behavior, and his need for treatment weighs in favor of a substantial term of imprisonment. While it is encouraging that defendant has participated in psychological treatment following his indictment in his case, it is troubling that defendant has not fully accepted that he has an attraction to children. As discussed above, defendant maintains that he has no sexual attraction to children—a position that defies both the overwhelming evidence and commons sense. Defendant's failure to acknowledge that he is sexually attracted to children despite the overwhelming evidence to the contrary (i.e., producing child pornography using Victim A and possessing scores of child pornography images and videos produced by

10

others) is another factor that weighs in favor of a substantial sentence, during which time he can continue his mental health treatment.

## IV. RESTITUTION

Counsel for the government and counsel for the defendant have discussed but have not been able to reach an agreement regarding restitution. Restitution to Victim A is mandatory, pursuant to 18 U.S.C. § 2259. In 2016, a court determined that Victim A was an abused or neglected minor, and since that time the Illinois Department of Children and Family Services (DCFS) Administrator has been Victim A's legal guardian. *See* Gov. Ex. 1. As outlined in a letter from DCFS (Gov. Ex. 1), Victim A has undergone psychological treatment to address her childhood trauma related to, among other things, the child pornography production crimes for which defendant now faces sentencing. The costs of Victim A's psychological treatment has so far totaled $7,342.50, and DCFS estimates annual psychological treatment costs of $2,447.50. *Id.* As noted in the DCFS letter, "It is expected that [Victim A] will need therapy on and off for years." *Id.* Indeed, as Victim A matures and comes to grips with the fact that a person she called "daddy" and viewed as a father figure sent images of her prepubescent vagina to an undercover officer, and took photos of himself masturbating in her presence, it seems implausible that she would not need, at the very least, the psychological treatment anticipated by DCFS. Accordingly, the government respectfully requests restitution for Victim A in the amount of $56,292.50, which is calculated based on Victim A's past treatment and the reasonable approximation of 20 years of future individual therapy and treatment, at an annual cost of approximately $2,447.50 per year. *Id.*

11

The government has also received restitution requests on behalf of victims of the "8 Kids Series" and the "Sweet Sugar Series." The government respectfully requests restitution in the amount of $15,000 for the victims of the "8 Kids Series" and an additional $15,000 for the victims of the "Sweet Sugar Series." The victims' statements and restitution requests from these victims were submitted as attachments to the Government's Version of the Offense. The restitution will go toward these victims' past and future medical services relating to physical, psychiatric, or psychological care, lost income, and any other losses they have suffered as a proximate cause of the offense. *See* 18 U.S.C. § 2259.

## V. FORFEITURE

The indictment in this case includes a forfeiture allegation for the following specific property: black Sony Experia Android T-Mobile mobile smart phone, device name C6906 Xperia Z1, found on Brown's person at the time of his arrest. This specific property contains visual depictions described in Title 18, Untied States Code, sections 2251 and 2252A, and was used and intended to be used to commit and promote the commission of the offenses. The government previously filed a motion for a preliminary order of forfeiture (ECF No. 77) and submitted a proposed order to the Court.

## VI. SUPERVISED RELEASE

Consistent with Probation's recommendation, the government recommends the imposition of a term of supervised release of 5 years. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports

Probation's recommendation that the term of supervised release include the conditions set forth in the PSR. It is especially important that the defendant receive mental health treatment.

## VII. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to a sentence within the applicable Sentencing Guidelines range. Such a sentence would be sufficient but not greater than necessary to reflect the goals of sentencing set forth in 18 U.S.C. § 3553.

Dated: July 11, 2019   Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   */s/ John D. Mitchell*
JOHN D. MITCHELL
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-5159